O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA E. CORRALES, | Case No. CV 15-2771-KES |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Maria E. Corrales ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB"). For the reasons discussed below, the Court concludes: (1) the ALJ properly evaluated the medical and non-medical evidence to formulate a residual functional capacity (" RFC") consistent with Plaintiff's limitations; and (2) the ALJ properly relied on the testimony of a vocational expert ("VE") to determine that Plaintiff could perform her past relevant work as a childcare provider. The ALJ's decision is therefore AFFIRMED.

# I.

## BACKGROUND

Plaintiff applied for DIB on March 22, 2012, alleging the onset of disability on April 23, 2011. Administrative Record ("AR") 121. On July 18, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 28-44.

On August 16, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 9-24. The ALJ found that Plaintiff had the severe impairments of fibromyalgia, arthritis, and hypertension. AR 14. Notwithstanding her impairments, the ALJ concluded that Plaintiff had the RFC to perform light work with the following additional limitations: lift or carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 6 hours of an eight-hour workday with regular breaks; sit for 8 hours of an eight-hour workday with regular breaks. AR 16-17. Based on this RFC and the testimony of a VE, the ALJ found that Plaintiff could still perform her past relevant work as a as a child care provider, and that she is therefore not disabled. AR 20-21.

# II.

## ISSUES PRESENTED

Issue No. 1: Whether the ALJ's determination that Plaintiff's depression is "non-severe" was based on a proper evaluation of conflicting evidence;

Issue No. 2: Whether the ALJ erred by formulating an RFC that did not account for Plaintiff's alleged psychological impairments, or the combined effect of her psychological and physical impairments;

Issue No. 3: Whether the ALJ properly discounted testimony by Plaintiff's sister; and

Issue No. 4: Whether the ALJ properly determined that Plaintiff could return to her past relevant work as a childcare provider. See Dkt. 31, Joint

Stipulation ("JS") at 2.[1]

### III.

### DISCUSSION

**A.    The ALJ Properly Evaluated the Evidence in Determining that Plaintiff's Depression is Non-Severe.**

    **1.    Relevant Background.**

The ALJ did not find that Plaintiff has any psychological impairment that would cause "more than minimal limitations" on her ability to perform work activities and therefore characterized her diagnosed depression as "nonsevere."  AR 14; 20 C.F.R. § 404.1521(a) (defining a "severe" impairment as one that has more than a minimal impact on a claimant's ability to do basic work activities).

In making this determination, the ALJ acknowledged that Plaintiff's medical evidence reveals a history of depression.  AR 15.  The ALJ noted, however, four pieces of evidence tending to show that Plaintiff's depression did not cause more than minimal functional limitations.

First, a mental status examination performed by Plaintiff's primary care physician in October 2012 contained findings that the ALJ characterized as "unremarkable."  AR 15, citing AR 283-87.  That report notes that Plaintiff's "first episode" of depression occurred in 1982.  AR 283.  She first visited this free clinic in June 2012, and now reports "worsening" of her symptoms.  AR 39, 283.  "The patient presents with anxious/fearful thoughts, depressed mood, difficulty falling asleep, diminished interest or pleasure, excessive worry and fatigue."  AR 283.  Nevertheless, the "psychiatric" findings from that examination reported Plaintiff as demonstrating "appropriate mood and

---

[1] For clarity, the Court has re-worded the issues presented to match the parties' arguments.

3

affect." AR 285. With regard to depression, Plaintiff was instructed to "schedule a follow-up visit with Kathy Haugh." AR 285. The Court was unable to locate any evidence in the record of a follow-up visit with Kathy Haugh.

Second, "claimant acknowledged that she had never received mental health treatment." AR 15; see also AR 16 ("the claimant has not received any treatment for her depression, which suggest that her symptoms are not especially troublesome"). In making this finding, the ALJ was relying on these statements in the "history" sections of Dr. Larisa Levin's report dated June 26, 2012: (1) "[S]he denied currently receiving any mental health services and is not seeing any mental health doctors, receiving counselling or therapy;" and (2) "Claimant has no history of inpatient psychiatric hospitalization. She has never been treated in the past by a psychiatrist nor received outpatient psychiatric treatment." AR 304. In addition, at the hearing in July 2013, Plaintiff gave the following testimony:

> Q:    Now, do you take any medication – do you see a psychiatrist for depression?
>
> A:    No. Because now I don't have health insurance.
>
> Q:    Before you didn't have health insurance were you seeing a psychiatrist or psychologist?
>
> A:    No.

AR 38-39.

Third, two agency psychiatrists reviewed Plaintiff's medical records and opined that her depression was non-severe. AR 16, citing AR 51, 63.

Fourth, when Plaintiff was examined by psychiatrist Dr. Levin of Alpine Medical Group, she "assessed no functional limitations." AR 16, citing AR 303-09. Specifically, Dr. Levin diagnosed Plaintiff with "adjustment disorder with depressed mood." AR 307. Nevertheless, in the "Functional

Assessment" section of her report, she listed eight kinds of work-related activities that Plaintiff is able to do, without noting even mild limitations. AR 308. Dr. Levin concluded, "Based on the examination today, claimant has no functional limitations in terms of her ability to work, from a psychiatric standpoint." AR 308.

With regard to Dr. Levin, the ALJ acknowledged that she assessed Plaintiff as having a Global Assessment of Functioning ("GAF") score of 55, a score indicating "moderate" functional difficulties. AR 15-16. The ALJ, however, chose to give "very little weight" to Dr. Levin's GAF score because (1) a GAF score is not "an adequate measure of the claimant's overall functional capacity for an extended period of time," and (2) the low GAF score was "inconsistent" with Dr. Levin's clinical observations, including her determination to assess no functional limitations. AR 15-16.

### 2. Plaintiff's Claimed Errors.

Plaintiff asserts the ALJ's analysis at step two was erroneous for the following three reasons:

(1) The ALJ's finding that Plaintiff failed to seek psychiatric treatment is not supported by substantial evidence (JS 4);

(2) The ALJ failed to provide a specific and legitimate reason supported by substantial evidence for discounting Dr. Levin's GAF score (JS 5); and

(3) The ALJ used the wrong methodology to assess the severity of Plaintiff's depression (JS 6).

### 3. Analysis.

a. The ALJ's finding that Plaintiff failed to seek psychiatric treatment is supported by substantial evidence.

Plaintiff testified at the hearing that even when she had insurance, she never sought treatment from a psychiatrist or psychologist to address her

depression.  AR 38-39.  She also told Dr. Levin that she had never received any mental health services, counselling or therapy.  AR 304.  The ALJ was entitled to rely on Plaintiff's own statements to conclude that Plaintiff's depression-related symptoms did not impair her functioning more than minimally if they did not prompt Plaintiff to seek counselling or other psychiatric treatment.

Plaintiff points to evidence that she was being prescribed Cymbalta as evidence that she was receiving treatment for her depression.  JS 4.  Her Cymbalta prescription, however, appears to have been for fibromyalgia.  Plaintiff testified that Cymbalta sometimes helped with her pain.  AR 38; see also AR 183 (medical record listing "fibromyalgia" as an "active problem" with no reference to depression and Cymbalta as a medication), AR 205 ("Assessment" of "fibromyalgia" and "plan" is "samples of Cymbalta … will be given."); AR 207 ("Diagnosis: fibromyalgia, back pain.  Please evaluate and treat.  Two times per week for four weeks.  Cymbalta 60 mg.").  The ALJ considered Plaintiff's fibromyalgia a severe impairment.  AR 14.  The ALJ was also aware of Plaintiff's use of Cymbalta.  AR 17, 38.  Thus, the ALJ did not overlook or ignore this evidence.

Failure to seek treatment is a specific and legitimate reason for discounting a claimant's subjective testimony concerning the severity of subjective symptoms such as loss of functionality from depression.  Bustamante v. Colvin, 599 Fed. App'x 730, 731 (9th Cir. 2015) (ALJ properly relied on claimant's failure to seek treatment to reject examining psychiatrist's opinion that she had disabling depression); Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (ALJ properly assessed claimant's depression and anxiety as non-severe impairments, where claimant "provided little evidence of significant psychiatric or psychological findings demonstrating severe mental impairment and had not been regularly treated by a licensed psychologist or

1   psychiatrist or received regular mental health counseling or therapy").  Thus,
2   the ALJ did not err in citing Plaintiff's lack of psychiatric treatment history as a
3   reason to consider her depression non-severe.

4           b.    <u>The ALJ provided specific and legitimate reasons for</u>
5                   <u>discounting Dr. Levin's GAF score</u>.

6       When the record contains conflicting medical evidence, the ALJ can
7   discount an examining physician's opinion upon giving "specific and
8   legitimate reasons" supported by substantial evidence.  <u>Carmickle v. Comm'r,</u>
9   <u>Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008).  An ALJ need not
10  accept the opinion of any physician if it is brief, conclusory, and inadequately
11  supported by clinical findings.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th
12  Cir. 2002) (ALJ properly discounted doctor's opinion that claimant was unable
13  to work when that opinion was inconsistent with the doctor's last examination
14  of record).  Rather, the weight given a physician's opinion depends on whether
15  it is consistent with the record and accompanied by adequate explanation,
16  among other things.  20 C.F.R. § 404.1527(c)(3)-(6).

17      Here, the ALJ determined that the low GAF score assessed by Dr. Levin
18  was inconsistent with her clinical findings and resulting conclusion that
19  Plaintiff had no functional limitations due to psychiatric symptoms.  AR 15-16.
20  This inconsistency is supported by the record, as discussed above.  AR 307-08
21  (opining Plaintiff has "no functional limitations in terms of her ability to work,
22  from a psychiatric standpoint").

23      Moreover, GAF scores are not dispositive of whether a claimant is
24  functionally impaired, which is the critical inquiry at step two of the sequential
25  analysis.  <u>McFarland v. Astrue</u>, 288 Fed. App'x 357, 359 (9th Cir. 2008) ("The
26  Commissioner has determined the GAF scale 'does not have a direct
27  correlation to the severity requirements in [the Social Security
28  Administration's] mental disorders listings'" citing 65 Fed. Reg. 50,746 and

50,765 (Aug. 21, 2000)); <u>Macias v. Colvin</u>, 2016 U.S. Dist. LEXIS 41711 at *24 (E.D. Cal. Mar. 29, 2016) (citing authorities deeming GAF scores unreliable).  Thus, the ALJ's second reason for disregarding that the low GAF score assessed by Dr. Levin was also specific and legitimate.

c.   <u>The ALJ used the proper methodology to assess the severity of Plaintiff's depression</u>.

The Secretary has established a five-step sequential evaluation process for determining whether a person seeking DIB is disabled.  20 CFR § 404.1520.  At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or combination of impairments.  <u>Id.</u>  An impairment is "severe" if it significantly limits the ability to perform basic work activities for at least a consecutive twelve month period.  20 CFR § 404.1520(a)(4)(ii); Social Security Ruling (SSR) 96-3p.  Basic work activities include understanding, carrying out, and remembering simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  20 CFR § 404.1521(b).  Plaintiff bears the burden of proving that she has severe impairments.  <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004 (9th Cir. 2005).

To evaluate the severity of alleged mental impairments in adults, ALJs "must follow" a "special technique" described by the regulations.  20 CFR § 404.1520a.  To use that technique, ALJs "must first evaluate [the claimant's] symptoms, signs and laboratory findings to determine whether [the claimant has] a medically determinable impairment(s)."  <u>Id.</u>, ¶ (b)(1).  Upon determining that the claimant has a medically determinable impairment, the ALJ must then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) …."  <u>Id.</u>, ¶ (b)(2).  Paragraph (c) provides that rating the degree of functional limitation "requires [ALJs] to consider multiple issues and all relevant evidence to obtain a longitudinal

picture of [the claimant's] overall degree of functional limitation." <u>Id.</u>, ¶ (c)(1).

Based on all the evidence, the ALJ must rate the claimant's functional limitations in four areas: (1) daily living, (2) social functioning, (3) concentration, persistence and pace, and (4) episodes of decompensation. <u>Id.</u>, ¶ (c)(3). The ratings must be either "none, mild, moderate, marked or extreme." <u>Id.</u>, ¶ (c)(4). If a claimant receives a rating of "none" or "mild" in the first three areas and "none" in the fourth area, then his mental impairment will be considered "not severe." <u>Id.</u>, ¶ (d)(1).

Finally, the ALJ must "document application of the technique in the decision." <u>Id.</u>, ¶ (e). The ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique." <u>Id.</u>, ¶ (e)(4); <u>see also</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012-1013 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.")

Here, the ALJ followed the mandated technique and documented her findings and conclusions. The ALJ found that despite Plaintiff's depression, Plaintiff was only "mildly" limited in the three relevant areas of functionality and had no episodes of decompensation. AR 15. The ALJ explained how she weighed the evidence to reach this conclusion. AR 15-16. Thus, the ALJ did not err in concluding that Plaintiff's depression was non-severe.

**B.** **The ALJ Properly Formulated Plaintiff's RFC.**

Plaintiff contends that the ALJ erred in formulating Plaintiff's RFC because she failed to consider her hyperparathyroidism. JS 10. This contention fails, because Plaintiff did not allege disability due to hyperparathyroidism. AR 138. Plaintiff was diagnosed with hyperparathyroidism in late 2009, which was successfully eliminated with surgery in 2010. AR 240-41 (Oct. 2009: diagnosis of likely primary hyperparathyroidism), 209 (Oct. 2010: recently diagnosed, awaiting surgery),

211 (Dec. 2010: status post-surgery, labs showed normal calcium level, hyperparathyroidism no longer listed among diagnoses)).  Plaintiff does not allege that she became disabled until April 23, 2011.  AR 121.

Plaintiff also contends that the ALJ should have accounted for limitations attributable to Plaintiff's depression in the RFC.  It is true that an RFC must take into account all of a claimant's medically determinable impairments, even those that are non-severe.  20 CFR § 404.1545(a)(2).

Here, however, Plaintiff does not claim any significant cognitive impairments caused by her depression.  Rather, she contends that the disabling symptoms of her depression are pain and fatigue.  AR 35-36; JS 3 (fibromyalgia is "associated" with "pain and depression"); cf. AR 159 (Plaintiff can follow instructions well and has no problems getting along with people).  The ALJ accounted for pain and fatigue by providing exertional limitations in Plaintiff's RFC beyond the limitation to light work.  AR 16-17.  While Plaintiff contends that her pain and fatigue are more disabling than the ALJ credited[2], she has failed to show that her depression caused any functional limitations

_____

[2] The ALJ gave a clear and convincing reason for discounting Plaintiff's testimony concerning the disabling nature of her pain and fatigue by pointing out that (1) Plaintiff's testimony is inconsistent with medical evidence and (2) the routine nature of Plaintiff's pain treatment.  AR 18.  The ALJ cited medical findings that Plaintiff has a full range of motion of the extremities and no neurological deficits.  AR 18, citing AR 350, 353, 360, 363, 379 (checking neuro motor/sensory "intact" and noting "normal range of motion, muscle strength, and stability in all extremities with no pain on inspection").  Indeed, the health clinic doctor still noted Plaintiff had a normal range of motion and normal muscle strength even upon documenting a fibromyalgia tender point calculation of 12.  AR 371.  See Guzman v. Colvin, 2015 U.S. Dist. LEXIS 1068 at *29 (E.D. Cal. Jan. 5, 2015) (upholding adverse credibility determination based on claimant's failure to seek mental health treatment and treatment records suggesting "her symptoms remained under control with conservative use of Cymbalta").

1  not addressed through exertional limitations.  Thus, the ALJ did not err.  <u>See</u>
2  <u>Sherman v. Colvin</u>, 582 Fed. App'x 745, 749 (9th Cir. 2014) (affirming
3  formulation of RFC where claimant "has not shown that his alleged
4  depression resulted in any functional limitations that the ALJ failed to
5  consider").

6  **C.  <u>The ALJ Gave a Germane Reason for Discounting the Testimony of</u>**
7  **<u>Claimant's Sister.</u>**

8  **1.  Background.**

9  The Claimant's sister, Rosario Ramon, completed an SSA Third Party
10  Function Report dated from May 2012.  AR 145-152.  The ALJ noted that Ms.
11  Ramon's statements appeared to be echoing Plaintiff's subjective complaints,
12  which the ALJ had already discounted due to inconsistency with the medical
13  evidence.  AR 18.  Accordingly, the ALJ found Ms. Ramon's statements
14  concerning the intensity, persistence and limiting effects of Plaintiff's
15  symptoms not credible.  AR 18-19.

16  **2.  Analysis.**

17  A lay witness statement such as Ms. Ramon's can be rejected so long as
18  an ALJ provides a germane reason, which can be the same reason given for
19  rejecting a claimant's statements.  <u>Valentine v. Astrue</u>, 574 F.3d 685, 694 (9th
20  Cir. 2009) (because ALJ gave valid reasons for rejecting claimant's complaints
21  regarding disabling nature of fatigue and "because the wife's testimony was
22  similar to such complaints, it follows that the ALJ also gave germane reasons
23  for rejecting her testimony").

24  Here, the ALJ properly determined that Ms. Ramon's statements largely
25  echoed Plaintiff's subjective complaints.  Indeed, Ms. Ramon even said that
26  she was repeating what her sister had told her, using phrases like "she told me
27  today" or "she said" when prompted to describe her sister's limitations.  AR
28  145-46.  The ALJ had already discounted Plaintiff's subjective testimony

concerning the disabling nature of her symptoms.  AR 17-18.  Thus, Ms. Ramon's reliance on her sister's subjective complaints was a germane reason for finding Ms. Ramon's statements less than credible.  AR 18; Duncan v. Colvin, 593 Fed. App'x 668, 669 (9th Cir. 2015) ("Although the ALJ's failure to give germane reasons for discounting [the daughter's] testimony was an error, [it] was harmless because [the] lay testimony described the same limitations that [claimant] herself described"), citing Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("if an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations").  Here, the ALJ's clear and credible reasons for rejecting Plaintiff's testimony concerning the disabling nature of her symptoms apply also to her sister's testimony.

**D.  Plaintiff Failed to Carry Her Burden of Demonstrating that She Cannot Perform Her Past Relevant Work as a Child Care Provider.**

### 1.  Background

At step four of the sequential analysis, it is Plaintiff's burden to prove she cannot return to her former work.  42 U.S.C. § 423(d)(1)(A); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Here, the ALJ asked the VE if a hypothetical individual of the same age, education, and experience as Plaintiff, with the RFC limitations the ALJ ultimately assessed (see AR 16-17), could perform Plaintiff's past work.  AR 42.  The VE testified that such an individual could perform the job of child care provider as it is described in the Dictionary of Occupational Titles.  AR 42.  Accordingly, the ALJ found that Plaintiff could perform her past work as it is generally performed.  AR 21.

### 2.  Analysis.

Plaintiff contends that that ALJ's determination that Plaintiff could work

as a child care provider is not supported by substantial evidence.  JS 21. Plaintiff complains that the RFC "does not describe the scope of claimant's work limitations and her inability to complete a work week, or even a work day due to her problems."  JS 22.

The RFC, however, is consistent with the exertional limitations for a child care provider as described in the DOT.  AR 42-43.  Plaintiff's argument merely repeats the same flawed claims of error in formulating the RFC that Plaintiff alleged in the prior sections.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [the claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts.  As discussed above, we conclude the ALJ did not."); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (because the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper").  Because the ALJ properly formulated Plaintiff's RFC, the ALJ was entitled to rely on the VE's testimony incorporating that RFC.

## IV.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.


Dated: May 17, 2016

_____
KAREN E. SCOTT
United States Magistrate Judge